UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Aiman M. Shokry,
Plaintiff

    v.

Trigen Energy Corp.,
Defendant

04 Civ. 1279 (SCR)

MEMORANDUM DECISION
AND ORDER

---

## I. Background

Plaintiff *pro se* Aiman Shokry ("Plaintiff" or "Shokry") filed a Complaint before this Court alleging that Defendant Trigen Energy Corp. ("Defendant" or "Trigen") violated Title VII of the Civil Rights Act of 1964 by discriminating against him on the basis of his national origin and religion. Before this Court is Defendant's motion for summary judgment. For the reasons explained herein, the motion is granted.

### a. Procedural Posture

On March 18, 2002, Plaintiff filed a charge with the New York State Division of Human Rights regarding Defendant's alleged discriminatory conduct in terminating his employment. In its response to these allegations, Defendant stated that Plaintiff was terminated because after his requests for an office and three weeks of vacation were denied "he continued to demonstrate a pattern of unreasonable and insistent demands which became divisive and disruptive."

On October 27, 2003, the Division of Human Rights found that there was no probable cause to believe that Defendant engaged in an unlawful discriminatory practice. The New York State Division of Human Rights found that Trigen terminated Plaintiff because he "continually disrupted them with his attempt to renegotiate his employment contract." Plaintiff was issued a Right to Sue letter on October 9, 2003. The letter stated that he had to file his lawsuit within 90 days of his receipt of the letter. Plaintiff's Complaint to this Court is signed and dated December 25, 2003. The *pro se* office date-stamped it "received" on January 9, 2004. The Complaint was date-stamped filed on February 17, 2004.[1]

---

[1] Defendant appears to have conceded that Plaintiff filed his Complaint within the time allotted by the Right to Sue letter. Nevertheless, this Court believes it appropriate to briefly address the apparent timeliness issue. Federal Rule of Civil Procedure 3 states that "[a] civil action is commenced by filing a complaint with the court," and Rule 5(e) states that "[t]he filing of …papers with the court … shall be made by filing them with the clerk of the court." In *Greenwood*, the Second Circuit found timely a plaintiff's complaint where the plaintiff filed it with the clerk of court by date-stamping it after business hours. *Greenwood v. State of N.Y., Office of Mental Health (OMH)*, 842 F.2d 636, 639 (2d Cir. 1988). The court noted that it previously defined the date of filing as the "delivery [of papers] into the actual custody of the

This Court previously denied Plaintiff's motion to amend his complaint to join Harry Schum, the Defendant's former Vice President of Human Resources, and Wilfred Petrie, former President of Trigen's Development Company, as individual defendants in this matter, and granted Plaintiff's request for a jury trial, even though it was made after the time allotted in Federal Rule of Civil Procedure 38 had expired.

### b. Statement of Facts

Plaintiff is an Egyptian American who practices the Muslim faith. Plaintiff began working for Defendant as a Senior Engineer on December 17, 2001. Defendant terminated Plaintiff's employment on January 18, 2002. Plaintiff worked the week of December 17 through December 21, did not work the week between Christmas and New Year,[2] and worked the first full week of January 2002.

The Plaintiff learned about this position while working for another employer. Plaintiff was contacted by a third party hiring agency about an employment opportunity with Defendant Trigen.[3] Plaintiff submitted his résumé to the agency, who forwarded it to Defendant. On his résumé and employment application, Plaintiff identified his place of education as Egypt.

During Plaintiff's prehire interview with Trigen's Director of Project Services, Richard Potter ("Potter"), Plaintiff discussed with Potter, *inter alia*, the fact that he and Potter's wife both practiced Islam. Plaintiff also asked Potter about the work space. Potter told him that he was trying to get offices for the engineers but that Trigen was moving to a new location and he could not promise that Plaintiff would get an office. During his prehire interview with Carol Lynch ("Lynch"), Trigen's Assistant Director of Human Resources, Plaintiff discussed various employment benefits and advised her that he expected three rather than two weeks vacation. Lynch explained that Trigen normally offers two weeks vacation to employees of his level and would not promise that he could get three weeks vacation. Plaintiff also interviewed with Thomas Buchanan ("Buchanan"), Trigen's Vice President of Project Services, and Cliff Price, Trigen's Director of Technology.

After his interviews, Plaintiff contacted Lynch to discuss further his request for three weeks of vacation time. Lynch explained that an employee in Plaintiff's position was entitled to two weeks of vacation and some additional personal and sick days. Lynch sent Plaintiff an offer letter around the same time. Plaintiff requested that Trigen change

---

proper officer, designated by statute." *Id.* (quoting *In re Gubelman,* 10 F.2d 926, 929 (2d Cir. 1925)). While filing the Complaint with the *pro se* office is not the same as filing it with the clerk's office, the Defendant neither identified the timeliness issue nor briefed it, so Court declines to make the argument for Defendant.

[2] Plaintiff states that Potter told him he could stay home from Christmas until the New Year. Pl. Dep. p. 147. In his deposition, Plaintiff states that he may have worked the Monday of the week of December 24, but did not work the rest of the week. Pl. Dep. p. 149. In his response to Defendant's Motion for Summary Judgment, Plaintiff states that he worked the entire week of December 24 except Christmas. Pl. Opp. Def's Mot. Sum. J. at 20. While this Court recognized the factual discrepancy, it notes that the outcome of this decision does not hinge upon whether Plaintiff worked that week or stayed home.

[3] As required for a motion for summary judgment, the Court construes disputed facts as the Plaintiff alleged them in his Complaint or during his deposition. Plaintiff spends some time discussing conversations he had with the hiring agency; as these discussions are irrelevant to the determination of this motion, they are not included in this opinion.

his start date and extend the time frame on his relocation package from six to nine months. Trigen agreed to make these changes and sent Plaintiff a revised offer letter, which Plaintiff signed and accepted on November 30, 2001. The letter was sent by Lynch on behalf of Potter. The amount of vacation time in the signed offer letter remained at two weeks.

On Plaintiff's first day of work on December 17, 2001, he again asked Lynch if his vacation time could be extended to three weeks. She told him that Trigen would not revise its vacation benefits offer. She then directed him to the cubicle he had been assigned. Plaintiff told her that he expected to be assigned to an office, not a cubicle.

Upon meeting with Potter, his immediate supervisor, Plaintiff repeated his expectation that he would be assigned an office rather than a cubicle. Potter told him that Trigen had recently moved into the office space and said that he would see what he could do about Plaintiff's work space. Plaintiff admits that Potter did not guarantee Plaintiff would be assigned to an office.[4]

Plaintiff states that other non-managers had offices or enclosed cubicles. These employees were Caucasian- or Asian-American. Plaintiff also alleges in his response to Defendant's motion for summary judgment that he needed space to perform his daily prayers, but he did not allege this in his Complaint and has not ever alleged that he communicated this request to his supervisors at Trigen.

Plaintiff was the only Senior Engineer in the Project Services group in the White Plains office. Defendant states that the other people who were assigned to offices in Trigen's White Plains office held positions more senior than Plaintiff's or were in other work groups. Trigen had a policy that all members of a particular work group would be located in the same work area, and a limited number of open cubicles, enclosed cubicles, and offices were available in each work area.

Plaintiff complained to Potter several more times about his assignment to a cubicle rather than an office. After this string of repeated requests, Potter advised Plaintiff that he could not assign him to an office. Potter told Plaintiff that the work space assignment was a human resources issue and that he should discuss his concerns with Harry Schum, the Director of Human Resources.

On January 16, 2002, Plaintiff sent an e-mail to Schum asking for a meeting to discuss issues regarding his employment. Schum responded to Plaintiff's e-mail on January 17, and they set up a meeting for January 18, 2002. At this meeting, Plaintiff again requested three weeks of vacation. Schum responded that the vacation was set at two weeks.[5] Plaintiff then repeated his requests for an office instead of a cubicle. Schum

---

[4] While Plaintiff stated in his Complaint that he was told he was getting an office or at least an enclosed cubicle, he admitted in his deposition that Potter "did not promise" he would get an enclosed cubicle or an office. Pl. Dep. p. 109. Instead, Potter said that he "expect[ed]" that an employee with Plaintiff's "level of responsibility and workload" would get an office. *Id.*

[5] Plaintiff states that Defendant offered three weeks of vacation to two other employees hired about the same time as he was hired. Pl. Opp. D's Mot. Sum. J. at 43. These employees were also hired in the Project Services Group. Both were hired as Principal Engineers, a position that Trigen describes as senior to Plaintiff's position as a Senior Engineer. The starting salary of one Principal Engineer, whose offer letter Plaintiff provided, was $102,500; Plaintiff's starting salary as Senior Engineer was $85,000. This Court recognizes that these other employees, who were hired for a position above that of Plaintiff's, were awarded three weeks of vacation. However, Plaintiff represented in his Complaint that he "conceded and accepted all the terms and conditions of [his] employment agreement" during the meeting with Schum, considered the vacation issue "closed," and did not ask the New York Department of Human Rights to

told Plaintiff that he could not redesign the floor space and Plaintiff would have to work in a cubicle. Plaintiff responded that the area where he was working "could cause an impediment to my progress and that [would] be your fault, not my fault." Pl. Dep. p. 186. Schum told him that private offices were only assigned to people holding certain positions, and offered to allow Plaintiff to move into one of the other open cubicles in the Project Services area. Plaintiff rejected this offer. Plaintiff never told Schum that he believed his assignment to a cubicle was based upon his national original or religion. Further, Plaintiff never told Schum that he believed Trigen discriminated against him because of his national origin and religion.

Plaintiff returned to his cubicle after the meeting with Schum, and asked Potter if he could leave work early that day. Potter asked him to wait at his desk. Potter then spoke to Buchanan, Potter's supervisor.

Potter recommended to Buchanan that Trigen terminate Plaintiff's employment. The reasons Potter provided were that Plaintiff was more concerned about whether he was assigned an office rather than a cubicle than discharging his duties; Plaintiff was often late and had already taken a lot of time off from work;[6] he just announced to Potter that he was going to take the afternoon off; and, finally, he did not carry out his responsibilities on the Rand Whitney project as Potter expected. Potter and Buchanan then contacted Schum in Human Resources regarding their decision to terminate Plaintiff, as was their usual practice. Schum approved of their decision to fire Plaintiff and notified them that Trigen had just received a report from the Maryland Department of Labor that indicated it was conducting an audit of Plaintiff for receipt of improper unemployment benefits. Schum deemed this to be an additional basis for terminating Plaintiff's employment. Buchanan and Potter made the final decision to terminate Plaintiff. After leaving Schum's office, Potter asked Plaintiff to meet with him and Buchanan. Buchanan advised Plaintiff that his employment with Defendant was not working out and asked him to leave. Later that afternoon, Plaintiff was given a termination letter from Trigen's Human Resources Department and signed by Schum.

During his time at Trigen, Plaintiff was assigned one main project: to prepare an HRSG bid evaluation on the Rand Whitney project. When Plaintiff was assigned the project, there was one bid. Plaintiff was instructed to assume full responsibility for the project by obtaining additional bids and comparing those bids with the one already submitted. Plaintiff was to evaluate the bid already submitted and compare it to the additional bids.

During the course of his employment, Plaintiff complained to Potter about one or two conversations he overheard between another Trigen employee and a third party that appeared to be jokes regarding Arabs and Muslims. Plaintiff would not tell Potter the name of the employee. Plaintiff made no other complaints to Potter of national origin and/or religious discrimination during his employment.

In his deposition, Plaintiff described one other incident in which an employee yelled at him and told him not to use a particular coffee cup in the break room. Plaintiff

---

consider it when he filed his complaint with them. This Court thus declines to accept Plaintiff's invitation to resurrect the vacation dispute and, instead, considers it only in determining whether Defendant's termination of Plaintiff was in violation of Title VII.

[6] The parties dispute how many days Plaintiff did not come to work. *See supra* note 2. Defendant's representation is reported not to suggest that Plaintiff did, indeed, take a great deal of time off from work.

believed that the manner in which she did so suggested that she believed he could not read or understand English, or that she did not like him.  Plaintiff did not report this behavior to Potter or any other person in the Human Resources Department.

**II.     Analysis**

   a.  **Summary Judgment Standard**

Summary judgment is required when "there is no genuine issue as to material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2005).  If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, however, summary judgment is improper.  *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).  Where, as here, the nonmovant bears the ultimate burden to prove at trial that the defendant discriminated, *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981), he may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Montana v. First Federal Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989).

A factual dispute is material only if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In assessing the record to determine if there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmovant.  *Vann v. City of New York*, 72 F.3d 1040, 1048-49 (2d Cir. 1995).  As "conclusory allegations, conjecture and speculation … are insufficient to create a genuine issue of fact," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), the party opposing summary judgment "must bring forward some affirmative indication that his version of relevant events is not fanciful."  *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations omitted).  Sweeping allegations unsupported by admissible evidence do not raise a genuine issue of material fact.  *See Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.,* 353 F.2d 946, 952 (2d Cir. 1965).

Rule 56 requires that when one party makes and supports a summary judgment motion, the other party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. Pro. 56(e).  If the court then determines that a rational trier of fact, taking the record as a whole, could not find for the non-movant, "there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

   b.  **Title VII Employment Discrimination Claim**

Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin…." 42 U.S.C.A. § 2000e-2 (a)(1)(2005).

In his complaint, the Plaintiff *pro se* alleges that Defendant's decision to terminate his employment was discriminatory "because of the nature of the response and comments [Schum] made" during the meeting that resulted in Plaintiff's termination. As further evidence that the termination decision was discriminatory, Plaintiff cites the "racial comments" made by other Trigen employees, "some" of which Plaintiff complained about to Potter. Plaintiff admits that he did not provide the names of the employees and states he only asked Potter to tell other employees not to make such comments. In his brief in response to Defendant's motion for summary judgment, Plaintiff alleges that Defendant violated Title VII by "mistreating him, exposing him to an environment that is h[o]stle and not protecting his legal rights for a period of five weeks, and maliciously and wrongfully terminat[ing] his employment alleging that he was disruptive and committed fraud." Pl. Opp. D's Mot. Sum. J. 36. Given that Plaintiff is *pro se*, this Court liberally construes his allegations.

*McDonnell Douglas* burden shifting is used to analyze Title VII discrimination claims that are based on circumstantial evidence. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973); *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (noting that the burden is not onerous). Here, Plaintiff must establish a *prima facie* case of discrimination. *See id.* If Plaintiff does so, then the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its action. *See McDonnell Douglas Corp.,* 411 U.S. at 802. If Defendant carries this burden, then Plaintiff must be "given full and fair opportunity to demonstrate by competent evidence" that Defendant's presumptively valid reasons for its action were a pretext for discrimination. *Id.* at 805; *see also Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995).

First, Plaintiff must prove by a preponderance of the evidence a *prima facie* case of discrimination. *See, e.g.*, *Quaratino*, 71 F.3d at 64. Plaintiff can establish a *prima facie* case of employment discrimination under Title VII by showing that: (1) he is a member of a protected class; (2) he satisfactorily performed the duties required by the position; (3) he was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of unlawful discrimination. *See id.*; *McDonnell Douglas,* 411 U.S. at 802, n. 13, 93 S.Ct. at 1824 n. 13; *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 104 (2d Cir. 1989).

Here, both parties agree that Plaintiff can satisfy the first and third prongs: Plaintiff, as an Egyptian-American Muslim, is a member of a protected class, and Defendant did discharge Plaintiff. The parties, unsurprisingly, dispute whether Plaintiff's job performance was satisfactory and whether his discharge occurred in circumstances that give rise to an inference of unlawful discrimination. *See, e.g.*, *Quaratino*, 71 F.3d at 64.

To determine if an employee's job performance was satisfactory, a court must look to "the employer's criteria for the performance of the job."[7] *Thornley v. Penton*

---

[7] Plaintiff cites his evaluations from other positions with other companies as evidence that his performance with Trigen was satisfactory. These evaluations are not relevant to the determination that this Court must make: whether Plaintiff's performance *while employed by Defendant* was satisfactory. *Cf. Thornley*, 104 F.3d at 29.

6

*Pub'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). This is a subjective standard, examined through the lens of the actual employer at issue—not a "reasonable" employer. *See id.* at 29-30. Thus, an employee's job performance is not necessarily satisfactory even if the employer's "demands on its employees were unreasonable and that an average employer would have found [the employee's] performance acceptable." *Id.* at 30; *see also Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004); *but see Offutt v. Gannett Satellite Information Network, Inc.*, 1998 WL 872443, *4 (S.D.N.Y. 1998) (noting that "*Thornley* has the potential to undermine Title VII … by insulating the employer from an inquiry by the factfinder into the potentially pretextual nature of the employer's reason for firing the employee").

Here, Defendant states that Plaintiff did not meet the criteria for the job in that he was overly concerned whether he was assigned to an office rather than a cubicle, took too much time off work, was late, and did an inadequate job on the Rand Whitney project. Defendant offered no contemporaneous evidence to support these conclusions. Plaintiff states his job performance was satisfactory and Defendant did not notify him otherwise. For the purposes of this motion for summary judgment, this Court assumes, without deciding, that Plaintiff satisfactorily performed his duties.

Next, the Court must determine if Plaintiff met his burden of alleging facts that would show, by a preponderance of the evidence, that his discharge occurred in circumstances that rise to an inference of unlawful discrimination. *See, e.g., Quaratino*, 71 F.3d at 64. An employee may be discharged "on the basis of subjective business judgments, for any reason that is not discriminatory." *Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921-22 (2d Cir. 1981). Thus, even if an employee fulfills his burden of showing that he satisfactorily performed his duties, an employer may dismiss him for other reasons, as long as they are not based on criteria protected under Title VII.

Given that Plaintiff is *pro se*, this Court construes his Complaint liberally. Plaintiff appears to be making two arguments: first, that his assignment to a cubicle rather than an office was made on the basis of his national origin or religion, and, second, that he was terminated on the basis of his national origin or religion.

Plaintiff alleges that Defendant discriminated against him by assigning other employees enclosed cubicles or offices, and requiring him to work in an open cubicle. For this treatment to constitute discrimination, individuals with whom Plaintiff attempts to compare himself must be "similarly situated in all material respects." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). Plaintiff was a Senior Engineer in Trigen's Project Services Group. Plaintiff states that six Trigen employees of Caucasian or Asian descent who held non-managerial positions were assigned offices or enclosed cubicles. None of these individuals held engineering positions or positions in the Project Services Group.

Defendant explains that each Group had a certain number of offices, enclosed cubicles, and open cubicles. No other Senior Engineer in Trigen's Project Services Group—the title Plaintiff held—was assigned to an enclosed cubicle or an office. *Principal* Engineers in that group were assigned private offices. That is not the same position for which Plaintiff was hired. Thus, Plaintiff has not shown that the six Caucasian and Asian employees who held non-managerial positions and were assigned to

7

enclosed cubicles or offices were "similarly situated in all material respects." *Shumway*, 118 F.3d at 64.[8]

Here, Defendant stated to the New York Human Rights Division that Plaintiff was terminated because after his requests for an office and three weeks of vacation were denied "he continued to demonstrate a pattern of unreasonable and insistent demands which because divisive and disruptive." Defendant now claims that Plaintiff was terminated because Plaintiff was more concerned about whether he was assigned an office rather than a cubicle than discharging his duties; Plaintiff was often late and had already taken a lot of time off from work; he just announced to Potter that he was going to take the afternoon off; and, finally, he did not carry out his responsibilities on the Rand Whitney project as Potter expected. This Court notes that these reasons, while not identical, are not inconsistent and do not suggest that Defendant unlawfully discriminated against Plaintiff. *See, e.g., Quaratino*, 71 F.3d at 64.

The only evidence Plaintiff offers of discrimination on the basis of national origin or religion are an incident in which another employee yelled at him about using a certain coffee cup, and one or two racially insensitive jokes made by other employees that he overhead. Plaintiff did not report the coffee cup incident to any of his supervisors. While he reported one or two incidents where he overheard a colleague make racist jokes, he refused to tell his supervisor the speaker's name so the matter could be appropriately investigated and addressed. Plaintiff offers no evidence that any employee in a supervisory position, much less one with authority to terminate his employment, engaged in discriminatory behavior towards him. These incidents do not fulfill Plaintiff's burden to show his dismissal was a result of unlawful discrimination. *Beyousi v. Bloomingdale's*, Inc., 97 Civ. 226,1998 WL 689939, *2 (S.D.N.Y. Oct. 2, 1998). Thus, the Plaintiff has not alleged facts that would show, by a preponderance of the evidence, that his discharge occurred in circumstances that rise to an inference of unlawful discrimination. *See Quaratino*, 71 F.3d at 64.

As Plaintiff has not fulfilled his burden to set forth a *prima facie* case, this Court need not consider if the employer articulated a legitimate, clear, specific and non-discriminatory reason for discharging the employee. *See Quaratino*, 71 F.3d at 64. Nevertheless, the Court notes for the record that Trigen provided a legitimate and non-discriminatory rationale for discharging Plaintiff: his continued and disruptive requests for reconsideration of the vacation time set forth in his November contract and his numerous complaints about being assigned to a cubicle. In addition, Plaintiff told the Director of Human Resources that if the quality of his work suffered "that [would] be your fault, not my fault." Pl. Dep. p. 186. Plaintiff's statement could support the final decision to terminate his employment and provide an additional valid, nondiscriminatory reason for firing him. Defendant Trigen has articulated a legitimate, clear, specific and non-discriminatory reason for discharging Plaintiff. *See Quaratino*, 71 F.3d at 64. Given that an employee may be discharged "for any reason that is not discriminatory," Defendant did not violate Plaintiffs rights under Title VII. *Stanojev*, 643 F.2d at 922.

---

[8] Plaintiff suggests in his brief in opposition to the motion for summary judgment that he required an enclosed cubicle for religious reasons. Plaintiff never alleged that he expressed these needs to Defendant, did not mention them in his Complaint. The Court declines, as it must, to consider the whether such a request, if properly made, would require that this Court come to a different conclusion in deciding Defendant's motion for summary judgment.

8

As Defendant satisfied its burden to show a non-discriminatory reason for discharging Plaintiff, Plaintiff has the ultimate burden to prove that the employer's rationale was merely a pretext for the discrimination. *See Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, (1981); *Quaratino*, 71 F.3d at 64. An employer's reason for termination cannot be proven to be a pretext for discrimination unless Plaintiff shows by a preponderance of the evidence that the proffered reason was false *and* that discrimination was the real reason. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2751-52 (1993); *Quaratino*, 71 F.3d at 64. To fulfill this burden, Plaintiff may show that a discriminatory reason, rather than the proffered reason, more likely motivated the employer, or that the explanation the employer provided is "unworthy of credence." *Burdine*, 450 U.S. at 255; *see also* See *McDonnell Douglas*, 411 U.S. at 804-805, 93 S.Ct., at 1825-1826.

Here, Plaintiff merely restates that six Caucasian or Asian people he identifies as non-managers were assigned offices or enclosed cubicles. He did not rebut Defendant's rationale for the "disparate" treatment: these employees either had positions senior to Plaintiff's or were assigned to a different work group. Plaintiff states in his moving papers that he was terminated because he "could not blend-in" at Trigen. This is insufficient to fulfill his burden of showing the Defendant's rationale for firing him was pretextual. *See, e.g.*, *Beshty v. General Motors*, 327 F.Supp.2d 208, 214 (W.D.N.Y. 2004), *aff'd* 144 Fed.Appx. 196 (2d Cir. 2005) (unpublished). Furthermore, Trigen was contacted by the Maryland Department of Labor regarding a suspicion that Plaintiff was receiving improper unemployment benefits. Even if this report was incorrect, the fact that Defendants considered it when they decided to terminate Plaintiff mean supports the conclusion that the decision to fire him was not based upon his religion or national origin. *Cf. Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996).

Finally, Plaintiff was hired by Potter, the same person who, with Buchanan, made the decision to fire him. The Second Circuit has noted that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire," particularly when the firing occurs shortly after the employee was hired. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997). Thus, Plaintiff has not, as he must at the summary judgment stage, submitted evidence from which a reasonable fact-finder could conclude that Defendant's stated reasons for terminating him "were not its true reasons, but were a pretext for discrimination." *Woodman v. WWOR-TV,* 411 F.3d 69, 76 (2d Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)).

To the extent that Plaintiff's Complaint can be read to allege a hostile environment claim,[9] the Plaintiff must allege "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000) (internal quotation marks omitted)). Plaintiff has not done so. Any hostile environment claim must therefore fail.

This Court notes that Defendant's decision to terminate Plaintiff undoubtedly impacted him personally, financially, and socially. The facts Plaintiff alleged do not,

---

[9] Plaintiff did not formally assert claims for hostile work environment and retaliation in violation of Title VII.

9

however, support a conclusion that Defendant unlawfully discriminated against him in violation of Title VII in so ending Plaintiff's employment. The fact that Plaintiff was not assigned to an office does not, as a matter of law, rise to unlawful discrimination where Plaintiff was unable to show that other, similarly situated employees were assigned to better quarters. Thus, this Court grants Defendant's motion for summary judgment.

**III.  Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

The clerk of the court is directed to close the case.

It is so ordered.

Dated: White Plains, New York
       January 9, 2006

_____
Stephen C. Robinson, U.S.D.J